Case 13-6250, EEOC v. New Breed Logistics, oral argument, 15 minutes per side. Mr. Blickensdorfer for the appellant. Good morning, Your Honors. May it please the Court. Matt Blickensdorfer on behalf of the appellant, New Breed Logistics. I'd like to reserve three minutes for rebuttal, Chief Judge Goldberg. That's fine, and you may proceed. Thank you, Your Honor. I'd like to start, Your Honors, with the award of punitive damages in this case. The award of punitive damages in this case suggests that there are no real limits on employer liability for punitive damages in Title VII actions. The Supreme Court, however, has made clear that punitive damages are not warranted in every case of even intentional discrimination, and that intentional discrimination is a necessary but not a sufficient condition for an award of punitive damages. Punitive damages are not warranted here for several reasons, but I'd like to focus today on the employer's good faith efforts to prevent and correct harassment under the Supreme Court's decision in Kolstad. Could I just ask you one initial question? Is there an issue as to whether New Breed made an objection to the jury instruction as to Kolstad good faith issues here? In my opinion, the jury is not, Chief Judge, but I'll be happy to address that. I believe that the EEOC has raised that as an issue, that there was some discussion about the instructions, but eventually the instructions were offered, jury was charged, and there was no actual objection made by New Breed at that time. Yeah, I'd be happy to address it, Judge Cole, because it's a terrific question. And the short answer is here that the district court gave New Breed essentially a standing objection on a number of grounds. What happened at the charge conferences were that New Breed submitted proposed instructions, of course. Our proposed instructions included the good faith Kolstad defense. At the charge conference, the district court indicated that New Breed did not need to object further to the failure to adopt its own instructions, and that New Breed could have those as a standing objection. At the end of a series of charge conferences, the district court asked to counsel, do you have anything else other than your standing objections? So the district court reinforced that notion that those objections made by virtue of submitting alternative instructions were preserved. Now, the district court on post-trial motions and the EEOC in its briefs here say that New Breed acquiesced to the admission of the good faith defense. And on appeal, the EEOC says that what the district court said was limited to a very specific particular issue. One might be able to read it that way, but it's certainly not how a reasonable person would have to read it. And having offered a proposed instruction that included the good faith defense, there's no reason to think that New Breed's trial counsel didn't understand it that way. It wasn't like that issue wasn't an important one that just faded from view for them. So our view of what happened is, whatever the district court intended, its language certainly led counsel to believe that those objections were preserved and that they need not be made any further. The other thing I would say about the- Is that reflected in the charging conference on the record? The district court statement, Judge Batchelder, is reflected. If there's nothing more to reflect how anybody interpreted that statement, except for the district court's subsequent statement at the end of the charging conferences where Judge Anderson said, anything more, New Breed, other than your standing objections. But there's not a statement from counsel for either side that fleshes that issue out. And it's clear what the standing objections were? Well, the district court referred to the standing objections as the alternative instructions that were being proposed that were not adopted. I recall the language where the judge said something like, other than your objections. I don't recall standing, but maybe it's just- Yeah, and admittedly, it's not the clearest statement in the world from the district court. But our point is, the issue was presented, the district court was fully aware of what New Breed's position was, and it makes no sense to think that trial counsel would have simply dropped that issue if they didn't believe that the trial court had allowed them to do so. The other thing I would point about that waiver issue is that the district court relied on an erroneous and superseded version of the precedents to find a waiver. This circuit's precedent, of course, used to be that objection had to be made both before and after the instruction was given in order to preserve it for appeal. That changed with the 2003 revisions to the Federal Rule of Evidence 51, I think it is. Sorry, I don't want to take up all your time on this. No, no, that's OK. It's an important point. The other point I would make on this is, I mean, it's entirely possible that the omission of this affirmative defense was what made all the difference in the world here for the jury. I mean, from the jury's perspective, whatever the employer did made no difference at all in terms of the punitive damages award, as far as the instructions were concerned. There were two elements that the jury was instructed on, not a third, and the third is what there was an awful lot of evidence about. Even aside from the jury instructional issue on this issue, Your Honors, I don't think the award can stand properly challenged in post-trial motions. And there's simply not evidence here to justify an award of punitive damages. On the issue of the prevention and correction of harassment and retaliation, the evidence clearly established that Newbreed had a written policy, that it had multiple avenues for reporting harassment or retaliation, that the policy was prominently posted in the places most likely to be seen by the employees, break room and near the time clock. And the evidence also indicated that everyone was aware that Newbreed had this policy. Now, the EEOC makes the point, I think, that there were some policies, maybe the same as the ones that you say were posted, that were provided to more permanent employees, but were not provided to temporary employees. Would those be the same policies that were posted in the break room and elsewhere for full view by any employee? That's correct, Chief Judge Cole. So EEOC's defense and the trial court's defense of the punitive damages award rests on two bases, essentially. And that's one of them, that the employee handbook was not distributed to the temporary employees. The employee handbook contained the sexual harassment policies, the anti-retaliation policy, and a number of other policies, most of which did not even apply to temporary employees. So that's why the handbook was not given. The policy that was in the handbook was the same policy that was posted in the break room and that was posted by the time clock. And which the evidence indicated everyone was aware of. And the proof of the pudding is in the tasting here, Your Honors. The employees testified they were aware that the policy was posted there. And the way this all got reported was that one of the claimants used the compliance line. And they all testified that they knew the compliance line was posted with the policies in the break room and at the time clock. One of the claimants here testified that she pulled the compliance line number off the policy as it was posted. So in terms of the effectiveness of what Newpre did to make employees aware of the policy, they were all aware. What better evidence is there than the fact that they were all aware of the policy and where it was posted? And I have one other question. Would you address the issue of whether a complaint to a harassing supervisor is a protected activity under Title VII for retaliation? Absolutely, Chief. I know we have an Eighth Circuit case out there that seems to say that it is. And maybe no cases from other circuits at this point. Fifth Circuit, Your Honor. We cited a Fifth Circuit case in our brief called Frank against Harris County, I believe, is the one. And admittedly, as far as I can tell, it's not been decided by this court. And there appears to be case law on both sides of that issue. What should the rule be? The rule should be this. At least in the case where the harasser, him or herself, is not the decision maker on an adverse action. At least in that case, talking back to the harasser, telling the harasser to stop, should not count as protected conduct. And here's why. The victim in that circumstance is already protected by a harassment claim. The harassment claim is available. And so it's not as if there's no remedy left here for the victim in that circumstance. The problem with converting that same set of circumstances into a retaliation claim is that it's unfair to the employer. The point of a retaliation claim is to penalize an employer who, despite knowing of harassment or other misconduct, has a retaliatory animus against the victim. In the circumstance we're talking about, the employer does not know. And that's what we had here with a couple of the claimants, Ms. Peet and Ms. Pearson. The only person who knew, could have known, that the evidence shows would have known about the harassment is the harasser himself. The employer had no opportunity to take any action to investigate it or correct it until there was an anonymous phone call well down the line. And so the point here is that the employer should have an opportunity to correct, ferret out, and do its best to prevent the conduct without effectively strict liability for retaliation because of a rogue supervisor who's doing the harassment. The flip side of the coin is the court should encourage victims of harassment to report it within the company to somebody who can do something about it. It's common sense that the harasser is not going to do anything about it. So for those reasons, we think the butter rule of law here is that for a complaint or for protected activity to constitute protected activity, it's a poor way to phrase it, but I think you know what I mean, is that it should be required to be reported to someone within the company who was not the harasser, him or herself. I will reserve the rest of my time for rebuttal, which I see I'm not paying much attention to. Thank you for your question. Thank you. Thank you very much. Appreciate it. Good morning, and may it please the court. My name is Susan Oxford. I represent the Equal Employment Opportunity Commission as appellee in this case. The district court correctly rejected all of the arguments Newbreed raises here on appeal. I'd like to focus my attention first on the two areas that Judge Cole, you have raised this morning. The punitive damages instruction in the admission of the Colstead affirmative defense language was not error in any sense, certainly not plain error. And here's why. This is an affirmative defense, which a defendant is entitled to waive. So first of all, we argue that there was not only waiver in this instance, because Newbreed at the charge conference had a discussion about the punitive damages instruction, which was comprehensive. And it covered the entire instruction. Newbreed asked for two specific changes with respect to the wording of defendant versus changing defendant to employer or vice versa. And I had it a second ago. And one other wording change, which the court adopted. And then the court offered a compromise, which Newbreed adopted. And at no point did Newbreed call the court's attention to the fact that it wanted the affirmative defense language added in. It cannot be, as Newbreed has argued here this morning, that its original proposed jury instructions are a standing objection on every single instruction. Because that would leave the district court with no understanding whatsoever of what Newbreed thought it should include. And the whole point of having the charge instruction conference, the charge conference, is so that the parties can iron out what would be the appropriate language to include in the charge. And there was a robust discussion on many, many subjects, including this punitive damages. So not only did Newbreed fail to ask to have the affirmative defense language included, it then acquiesced when the judge completed the discussion of punitive damages and said, is there anything else? Newbreed said, no, this is fine with us. Let's suppose that we were inclined to say, well, the standing objection business misled them a little bit, just if we were inclined to do that. What would the record show? What was before the jury that would have supported the Kolstad instruction, the affirmative defense instruction, had it been given? That's an excellent question. I think if you look at the party's closing arguments, you can see that, in fact, Newbreed did not assert the affirmative defense. And here this morning, Newbreed, again, is arguing the Farragher-Ellers affirmative defense to a sex harassment claim. But if you look at EEOC's closing argument, and it's in document number 265, starting at page 67 of the transcript, which would be page ID 6277. It continues to page 6280. EEOC's closing argument focused primarily on the retaliation. And EEOC went through and started out by commenting that Newbreed had failed to adequately implement the sex harassment policy by not distributing it to 80% of the workforce. But then each of the points that EEOC went on to mention as supporting punitive damages, and this is specifically focused on the punitive damages argument to the jury, said Newbreed terminated Part T at the request of Calhoun on the same day Part T was identified as a witness corroborating the harassment charges against Calhoun. Newbreed called Part T a time thief and offered no time records to substantiate it. Again, to try to justify discharging these people in contrast to EEOC's position that their discharge was engineered by Calhoun as a retaliatory act. That Newbreed was in court accusing Hines of excessive tardiness and that that was the reason for her discharge, not Calhoun's retaliation, with no time records to substantiate that she was excessively tardy, accusing Pete and Pearson of poor performance with no documentation of discipline. Each item, and finally, although Calhoun was involved in all of this termination, no one at Newbreed reconsidered the terminations of these four individuals once it drew the attention of the managers at the highest level that Calhoun was a harasser and that these are the individuals who had been harassing him, the three women, and the fourth, the man, was the person who had corroborated the harassment and was the primary witness on which the HR department was basing its recommendation to discharge Calhoun. The argument of EEOC in terms of punitive damages was that this showed a reckless disregard of these four employees' Title VII rights at the highest levels. This has gone way beyond the implementation of a sexual harassment policy or the failure to implement it adequately. In response to that, and this is where it's crucial to see what was Newbreed arguing to the jury, in response, in Newbreed's closing, and that is that the same trial transcript, record number 265 beginning at 93 of the transcript, page ID 6303, Newbreed has seven lines in the transcript. It says that punitive damages should not be awarded because Newbreed's response to the harassment allegation was immediate, as in within two weeks they had discharged Calhoun. Newbreed had a policy, and when Newbreed obtained corroboration two weeks after the charge initially came in, there was an immediate response to terminate the harasser. That's the entire sum of Newbreed's argument to the jury why punitive damages should not be awarded. Newbreed did not even take issue with the argument of EEOC that it had failed to protect employees' rights under Title VII from being discharged in retaliation for complaining about harassment. So we would say, not only did Newbreed waive the affirmative defense, Colstead affirmative defense language when it failed to ask for it, not only did it acquiesce in the omission of the language when it failed, when it actually said to the judge, Your Honor, that language is fine with us, there was nothing in the trial argument to the jury that would have sustained anything more than the Farragher-Ellerth defense, which was the entire focus, and that doesn't even approach what EEOC argued, and I didn't even mention our rebuttal where we went back and talked about the retaliatory actions that had happened at the highest levels of Newbreed. So we would say that there was no error in the omission of that language here. You mentioned retaliation at the highest levels of Newbreed. Where in the record does it show that sort of this malice and reckless indifference extended beyond Mr. Calhoun? And let me. If I assume that standard, you have to show that the company had malice and reckless indifference, not just a- Yes, I misspoke to the extent I suggested we think anyone at a higher level was affirmatively retaliating. What we believe is that Mr. Calhoun, through the cat's paw method of influencing this, engineered the termination of all four of EEOC's claimants, and the reckless disregard for punitive damages comes when the individuals failed to take the time to go back and re-examine these four discharges. So Ms. Hines was discharged by Mr. Calhoun before the hotline complaint even came in, but that had, according to Newbreed's own witnesses, that had to be approved by HR, although it was at Mr. Calhoun's recommendation, and they always took the supervisor's recommendations as the testimony in the record. So that's the first sex harassment victim. The next two, Pearson and Pete, are transferred to Malone's department, and there, again, EEOC presented evidence and argued to the jury that Calhoun engineered their discharge. Malone said that that had to be through the approval of HR, and so again, there's someone at a higher level of management that is seeing these three individuals have been, their Newbreed employment has been terminated, and then the, meanwhile, at the same time, the harassment investigation is underway, and these are the three complaining individuals who are saying they are being sexually harassed by Calhoun, and Partee is the corroborating witness, and now Calhoun is recommending his discharge for, quote-unquote, stealing time. I claim that Newbreed, at trial, did not substantiate by putting in any documentary evidence whatsoever of his clocking in and out, which Partee testified to the jury. Essentially, your claim is that the people who were on the upper levels responsible for taking a look at this instead simply took Calhoun's recommendations and went no farther. Correct. At the same time that they knew that they had, and EOC's trial attorney had the general counsel and vice president of the company on the witness stand, and so the jury heard his testimony, said, did you not have on your desk, at the same time, the HR's recommendation that Mr. Calhoun be terminated for harassment of three individuals, the primary corroborating evidence being the statement of Mr. Partee, and at the same time, Mr. Calhoun, the accused harasser, Mr. Calhoun's recommendation that Partee be terminated. Were those two documents not on your desk at the same time, and he said yes. Then she asked, did you not think it strange that the accused harasser, the charge being substantiated by Mr. Partee, was recommending his termination, and he said, no, I did not, and so he then approved the termination of Mr. Partee. We argued to the jury that although Newbreed contended that it was investigated, that in fact it was not, and we presented evidence that the jury was entitled to consider that Newbreed relied almost primarily, almost entirely, on Mr. Calhoun's recommendation for Partee's termination, and both of those recommendations were on the Vice President and General Counsel's desk at the same time. They were both approved, and so by the time Newbreed completed what it claims was its thorough and prompt investigation of sex harassment, all four of the involved individuals had been terminated, and no one at Newbreed, at any level, went back and examined the actions that had been taken at the behest of Mr. Calhoun. Now, granted, these are all contested factual allegations, and Newbreed, in its brief, has argued to this court that there was evidence to the contrary that the jury could have considered, but that is not the standard that the district court was asked to apply when it was considering Newbreed's motions for a new trial or for judgment as a matter of law. The question is whether the jury had evidence before it to find contrary to Newbreed's contentions, and it did on each of these points. We'd also like to address briefly the argument that saying no to a harassing supervisor is, in fact, protected activity under Title VII. We've explained in our brief at pages 42 to 51 that this is consistent with the plain language of Title VII. The anti-retaliation provision says that an individual is protected if they oppose conduct, which would be unlawful under Title VII, and I think it is beyond dispute that what Mr. Calhoun was doing, the sexual harassment of these three women, was, in fact, conduct that is made unlawful under Title VII. They each opposed it by asking him to stop, demanding that he stop, and then Mr. Partee also said to him, you need to stop harassing those women. They just don't like it. In response, before anyone at a higher level knew that this was going on, Mr. Calhoun called his entire department together, which included the three women who alleged he was harassing them and Mr. Partee, who said he observed it, and said, if anybody tries to tell on me, there will be consequences. I will see. I guess his language was, I run this shit, and this will not happen in my department. So, he puts the threat out there. If, in fact, and then, within a week, Ms. Hines is terminated at his recommendation. There's no dispute that even if HR needed to approve it, it was at his recommendation, and HR always took his recommendations. So, if, in fact, it would be okay, if an individual who's being harassed needs to do more in order to be protected from retaliation, there would be a huge loophole in the statute, and we have cited the Eighth Circuit's decision in Ogden and numerous district court decisions, including, I think, there were four in this circuit that we cited, that have agreed that Title VII, that Congress never intended that kind of loophole to exist, and for all- If your plain language argument sort of boils down to the statute says oppose, and that means oppose, and it doesn't say where that opposition has to be directed, suppose the opposition was not made to anybody within the employment context, but was made to somebody on the outside who could publicize what was allegedly going on inside the employee-employer relationship. Would that be sufficient? Well, remember, the other piece of a retaliation claim is that the adverse action was because of the opposition, and so I think, yeah, if somebody opposed publicly, and it was published in the newspaper, and then the employer took action against an individual, I think, yes, but it's the because of, is it protects, to the extent your honor is concerned that there might be, it might be an overly broad protection that it might encompass employers that should not have that imposed on them, the employer still has to take the action because of, and here we say, under the cat's paw theory, this was because of Mr. Calhoun's engineering their discharge. I see that I'm out of time. If the court has no further questions, we rely on our brief. Thank you, Ms. Oxford. Your honors, I'd like to address three points real quickly made in the EEOC's argument, any additional questions that the court may have. First of all, Judge Batchelder, you asked what evidence there was to support punitive damages, and the answer, as I heard it, was that Newbreed didn't argue enough about it in closing argument. The evidence was that there was a well-publicized policy of which everyone was aware, that the policy was exercised in this particular instance, that Newbreed instituted an immediate and thorough investigation that resulted in the firing of the supervisor in question after interviewing 12 people in the span of two weeks, including all but one of the people who were identified as witnesses, and including other people who were not identified by any claimant as a witness. The policy was good, the investigation was good, and the criticisms of it are entirely misplaced. The standard is good faith, it is not perfection, and it is not criticism with hindsight on grounds that, frankly, don't reflect either reality or good human resources practice. In response to a question from Judge Cole, I heard the EEOC say that the upper levels were involved, in part because no one reconsidered the reasons for the firing. That is inconsistent with the record. First of all, Ms. Hines was terminated well before the investigation of Calhoun took place. She had attendance problems on multiple occasions, she admitted it, and she admitted to the jury that that may well have been the reason that she was fired. There was no reason for Newbreed to reconsider that when the claimant herself admitted to the problems. With respect to Ms. Peet and Ms. Pearson, the Human Resources Director, Carissa Woods, testified that she, during the course of the investigation, did ask Lou Anne Hearn, who was the on-site human resources personnel, about the reasons for Peet and Pearson's termination, given that they were the claimants and that they were in the midst of the investigation of Calhoun. She did go back and revisit those issues as to their termination. With respect to Mr. Partee, there was an independent investigation. Two people testified that they had confirmed what Mr. Calhoun suspected. And in terms of causation for Mr. Partee, there's no evidence that anybody in the group that was involved in Mr. Partee's termination, until it got to the final approval at the general counsel level, but that the on-site decision makers who recommended his termination, there's no evidence that they knew that Partee was a witness and had agreed to be a witness in the investigation. So my time is out. Unless the court has further questions, I thank the court for its time. Thank you very much, counsel. We appreciate arguments from both counsel. Thank you again. The case will be submitted, and you may call the next case.